IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELAUTERIO PACHECO, | ) | |
| | ) | |
| Petitioner, | ) | No. 14 C 0237 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| GREGORY GOSSETT, Warden, Illinois River | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Elauterio Pacheco filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that, (1) in denying his motion to suppress statements he made to police the state trial court improperly considered his denial that he made such statements in violation of his due process rights (Ground One), and (2) that his trial counsel was ineffective in violation of his Sixth Amendment rights by failing to present evidence of a threat of imminent death or bodily harm to him or his family as part of his compulsion defense (Ground Two). Having reviewed the supplemental briefing, the court denies the habeas petition and declines to issue a certificate of appealability.

**BACKGROUND**

In 2011, a jury convicted petitioner of unlawful delivery of a controlled substance after he delivered over 900 grams of cocaine to an undercover police officer. Petitioner was sentenced to 15 years in prison.

Before trial, petitioner sought to suppress a confession he had given to the police admitting to his involvement in the crime. Petitioner argued that the confession was involuntary, and therefore a violation of his Fifth Amendment rights, because, as a native Spanish speaker, he

did not understand his Miranda rights. The trial court held a hearing on petitioner's motion at which one of the officers who interviewed petitioner following his arrest testified that during the post-arrest interview, petitioner expressed that he knew some English, but felt more comfortable speaking in Spanish. The officer explained that he was fluent in Spanish and conducted the remainder of the interview in that language. The officer testified that petitioner was read his Miranda rights in Spanish from a preprinted form also in Spanish from which petitioner read along, running his finger down the page as the form was read. According to the officer, petitioner did not ask any questions nor did he state that he did not understand. After the form was read, petitioner signed it, indicating that he understood his rights. The officer testified that after signing the form, petitioner admitted that he had picked up two kilograms of cocaine, intending to sell it.

Petitioner's version of the events were substantially different than the officer's. Petitioner testified that he was scared following his arrest because the police had drawn their guns and handcuffed him while in the police car. Petitioner was also frightened because one of the interviewing officers was wearing a ski mask. Petitioner testified that although the officers spoke to him in Spanish and he could understand them, the officers did not read the Miranda rights form to him, but instead handed it to him without any explanation of its contents. According to petitioner, he signed the preprinted form without reading it because he felt that he did not have a choice and does not read well. Petitioner maintained that he did not admit to any criminal conduct during the interview.

Following the hearing, the trial court denied petitioner's motion. The court found the officer's testimony that he read the Miranda warning to petitioner and that petitioner ran his

2

finger down the form as he read credible. The court also credited the officer's testimony that petitioner did not indicate that he did not understand his rights and seemed "coherent, lucid, and not confused." The trial court noted that according to the officer's testimony, petitioner declined to answer certain questions about where and from whom he had gotten the drugs. Accordingly, the court found that petitioner "knew enough to exercise his right not to answer" those questions.

The court observed that during the suppression hearing, petitioner had, "no difficulty understanding the questions that were asked of him; and when he did not understand, he came right out and said" that he did not understand. Because petitioner maintained that he did not understand his rights, while still refusing to answer questions he "feared," the court questioned petitioner's credibility. The court also questioned petitioner's credibility because he denied having any conversation at all with the officers, including answering questions that would have helped him.

On direct appeal, petitioner argued that the trial court erred in denying his motion to suppress because it considered the substance of his statement and found that his testimony denying making a custodial statement negatively impacted his credibility. People v. Pacheco, No. 2-11-1022, 2012 WL 6968063, at *6 (Ill. App. 2d Dist. Sept. 13, 2012). He also argued that his trial counsel was ineffective for presenting a compulsion defense when "no such defense was available," because his testimony "came no where close to meeting the elements of the compulsion defense, which requires that the defendant acted under a threat or menace of the *imminent* infliction of death or great bodily harm." Pet. Br. on Direct Appeal, People v. Pacheco, No. 2-11-1022 (emphasis included). The state appellate court affirmed petitioner's conviction, holding that the trial court was reasonable in concluding that petitioner's confession was

constitutional and rejecting petitioner's claim that his trial counsel was ineffective. Pacheco, 2012 WL 6968063. Petitioner subsequently filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, which was denied on January 30, 2013. People v. Pacheco, No. 115118. The PLA sought review only of the trial court's denial of petitioner's motion to suppress. Pet. PLA, People v. Pacheco, No. 115118. On January 13, 2014, petitioner filed the instant § 2254 petition for a writ of habeas corpus.

## DISCUSSION

**A.     Legal Standard**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard of review applied to federal habeas corpus petitions filed under 28 U.S.C. § 2254 by persons in state custody. Under the AEDPA, a petitioner is not entitled to a writ of habeas corpus for a non-defaulted claim unless the challenged state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established Supreme Court law, "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court. Williams v. Taylor, 529 U.S. 362, 405 (2000).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal

4

quotations omitted). The court can issue a writ only if it determines that the state court's application of federal law was "objectively unreasonable." Williams, 562 U.S. at 409. It is a difficult standard to meet, because unreasonable means something lying "well outside the boundaries of permissible differences of opinion." McFowler v. Jaimet, 349 F.3d 436, 447 (7th Cir. 2003) (internal quotations omitted).

**B.      Analysis**

    **1.      Motion to Suppress – Ground One**

Petitioner's habeas petition argues that the trial court erred by denying his motion to suppress because it considered the substance of his alleged confession even though he denied making it and by concluding that his testimony that he never made an inculpatory statement to the police reflected negatively on his credibility.[1] However, in his reply brief, petitioner appears to attack the voluntariness of his Miranda waiver and subsequent confession. Petitioner contends that under Lee v. State of Mississippi, 332 U.S. 742 (1948), "the due process clause invalidates a state court conviction grounded in whole or in part upon a confession which is the product of other than reasoned and voluntary choice." Petitioner argues that "[t]he facts in this case are clear, petitioner felt he had no choice but to sign a piece of paper, that later turned out to be a Miranda waiver form."

According to petitioner, the evidence at the suppression hearing established that the police officer "never admonished petitioner of his Miranda rights," because he "read the Miranda

---

[1] The court notes that in petitioner's § 2254(d) petition he wrote that he "was read his Miranda Rights in Spanish but because he did not understand [the officer] he did not respond." This statement directly contradicts petitioner's testimony at the suppression hearing and his claims throughout his state criminal proceedings, that the officers never read him anything and instead "just gave [the form] to [him] and said sign it." Pacheco, 2012 WL 6968063 at *2.

5

warnings to petitioner straight through, without stopping to determine whether he understood those rights." Petitioner also argues that the nature of the custodial setting, including the fact that one of the officers was wearing a mask, "dispelled" the notion that he had a choice as to whether to waive his rights. Finally, petitioner contends that the state trial court erred by failing to "make a factual determination whether petitioner actually knew how to read or write in Spanish."

Because petitioner did not previously challenge the trial court's determination regarding the voluntariness of his statements, this court is barred from considering that argument now. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). The court's review, therefore, will be limited to analyzing the Illinois Appellate Court's application of established federal law to petitioner's claim that the trial court erred in denying his motion to suppress by improperly considering the substance of his confession and by relying on his testimony that he did not confess to the police in finding him not credible.[2]

With respect to petitioner's argument that the trial court improperly considered his testimony denying that he made a custodial statement, the Illinois Appellate Court explained that "it is well settled that a trial court may consider a defendant's testimony during a suppression hearing to determine credibility." Pacheco, 2012 WL 6968063 at *6. The appellate court correctly noted that Lee "preclude[s] a trial court from denying a defendant's motion to suppress

---

[2] The relevant state court decision for purposes of this court's assessment under § 2254(d) is the last decision of the last state court to rule on the merits of petitioner's claim, which here is the Illinois Appellate Court. See Charlton v. Davis, 439 F.3d 369, 374 (7th Cir. 2006).

6

based solely on the defendant's testimony that he did not confess." Id. The appellate court found that the trial court "did not deny defendant's motion to suppress based solely on his testimony that he did not confess," but instead considered numerous factors, including the fact that the officer's testimony concerning petitioner's Miranda waiver was credible and that during the hearing petitioner "had no difficulty understanding the questions that were asked on him, and when he did not understand, he came right out and said, 'I don't understand.'" Id. As such, the appellate court concluded that the trial court properly denied petitioner's motion to suppress. Id. at *7.

The appellate court's decision was neither an unreasonable application of federal law nor an unreasonable determination of the facts. Identifying Lee as the appropriate federal law, the appellate court recognized that "an accused is entitled to both deny a statement and allege it was improperly obtained." U.S. ex rel. Reid v. Lane, No. 87-C-7036, 1988 WL 9018, at *1 (N.D. Ill. Jan. 28, 1988). However, by taking this position, petitioner undertook the "substantial risk that the trier of fact will, as a consequence, believe neither" position. Id. As the appellate court recognized, the trial court did not prevent petitioner from taking both positions, which would have run afoul of Lee, but instead properly considered his denial as one of many factors in denying the motion to suppress.

With respect to petitioner's claim that the trial court erred by considering the substance of his confession when he denied making it, he points to no established federal law which prohibits such a practice. Moreover, as the Illinois Appellate Court found, "the trial court did not consider, substantively, the content of defendant's statements. Rather, the trial court assessed defendant's credibility and understanding of the questions asked of him." Pacheco, 2012 WL 6968063 at *7.

7

This analysis was not an unreasonable determination of the facts. Consequently, the court denies petitioner's § 2254(d) petition as to Ground One.

2.  **Ineffective Assistance of Counsel – Ground Two**

Petitioner also argues that his trial counsel was ineffective for failing to present evidence of a threat of imminent death or bodily harm to him or his family as part of his compulsion defense. Specifically, petitioner argues that his trial counsel was aware of, but failed to present evidence of, the threats that were allegedly made to him prior to his commission of the crime. Respondent argues that petitioner's ineffective assistance of counsel claim is procedurally defaulted because, although raised on direct appeal, he failed to raise it in his PLA. The court, however, notes that not only was petitioner's present ineffective assistance of counsel claim never raised in his PLA, but that this specific claim was not raised at any point on appeal and is, in fact, the opposite of the claim raised on direct appeal.

As discussed above, on direct appeal, petitioner argued that his trial counsel was ineffective for presenting a compulsion defense when "no such defense was available," because his testimony "came no where close to meeting the elements of the compulsion defense, which requires that the defendant acted under a threat or menace of the *imminent* infliction of death or great bodily harm." Pet. Br. on Appeal, Pacheco, No. 2-11-1022 (emphasis included). The Illinois Appellate Court framed petitioner's claim as arguing that his "defense counsel's adoption of the compulsion defense was ineffective because there was no evidence of imminent threat of death or great bodily harm . . . ." Pacheco, 2012 WL 6968063 at *8. Although petitioner argued on direct appeal that trial counsel was ineffective for presenting a compulsion defense because there was no evidence of an imminent threat of death or great bodily injury, petitioner now

8

argues that trial counsel was ineffective in presenting a compulsion defense because there was such evidence, but counsel failed to submit it to the court.

Even liberally construing petitioner's present claim as the ineffective assistance of counsel claim he made on direct appeal, it is procedurally barred because it was not raised in his PLA. Petitioner, however, argues that his procedural default should be excused because his private attorney who prepared and filed his PLA did not communicate with him and "he was not even aware that the ineffective assistance of counsel issue was not included in the PLA." Petitioner claims that he tried to file a supplement to the PLA in an attempt to include his ineffective assistance claim, but ultimately could not because the inmate helping him was sent to segregation.[3]

In order excuse his default, petitioner must show, (1) cause for his failure to raise the issue and actual prejudice as a result of the alleged constitutional violation, or (2) that a "fundamental miscarriage of justice" will result if federal habeas review is denied. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner's excuses, however, do not warrant overlooking his default. The Supreme Court has recognized "that default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived that claim." Murray v. Carrier, 477 U.S. 478, 485 (1986) (holding that petitioner's procedural default was not excused where appellate counsel failed to raise claim on direct appeal). Barring some external impediment, counsel's failure to raise an argument constitutes "cause-and-prejudice" only where

---

[3] Petitioner's affidavit asserts that he attempted to file the supplement in August 2013. However, the court notes that petitioner's PLA was denied in January 2013.

her performance is constitutionally ineffective under the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Id</u>. at 488-89. Petitioner has not shown that his appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claim in the PLA, and it is unlikely that he would be able to do so given the presumption that counsel's action was a sound trial strategy. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. Accordingly, petitioner's default is not excused and this court is barred from considering his second ground for habeas relief.

**C.     Certificate of Appealability**

A habeas petitioner is entitled to a certificate of appealability only if he has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(2); see <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 336 (2003); <u>Evans v. Cir. Ct. of Cook Cnty</u>., 569 F.3d 665, 667 (7th Cir. 2009). To make that showing, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotations omitted). When the court has rejected the constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. <u>Id</u>.

Here, this court concludes that: (1) the Illinois Appellate Court's decision that the state trial court did not err in denying petitioner's motion to suppress was neither contrary to, nor an unreasonable application of, Supreme Court precedent; and (2) petitioner procedurally defaulted his ineffective assistance of counsel claim by failing to raise it in one complete round of state

court review, and that his failure is not excused by cause and prejudice or a fundamental miscarriage of justice. Reasonable jurists could not find otherwise. The court therefore declines to issue a certificate of appealability on either of petitioner's claims.

## **CONCLUSION**

For the foregoing reasons, the court denies the habeas petition and declines to issue a certificate of appealability.

**ENTER:**     **July 23, 2015**

_____
**Robert W. Gettleman
United States District Judge**